1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    NICK C. BUCKHALTER,                    No. 2:17-cv-02072-KJM-AC

12                  Plaintiff,

13          v.                                ORDER

14    DANIEL TORRES, in his personal and
      official capacities as a peace officer of
15    Vacaville Police Department, et al.,

16                  Defendants.

17

18          This excessive force civil rights action brought under 42 U.S.C. § 1983 arises from

19   plaintiff Nick Buckhalter's arrest and handcuffing by Vacaville police officer Daniel Torres.

20   Plaintiff brought this lawsuit against defendants Torres, Vacaville police officer Roger Canady,

21   the Police Chief, the City of Vacaville and other city and police department personnel, alleging

22   Torres kept plaintiff secured in excessively tight handcuffs for up to seven hours before booking

23   him into jail, despite plaintiff's requests to loosen them.  Defendants Torres and Canady now

24   move for summary judgment, or in the alternative, partial summary judgment on all of plaintiff's

25   claims.  Mot., ECF No. 46.  Plaintiff has filed an opposition, ECF No. 53, and defendants have

26   filed a reply, ECF No. 54.  The court heard argument on the motion on January 25, 2019.  As

27   explained below, the court GRANTS in part and DENIES in part defendants' motion.

28

                                              1

1  I.      BACKGROUND

2          A.      Disputed and Undisputed Facts

3              The following facts derive from defendants' statement of undisputed facts

4  ("SUF"), plaintiff's statement of additional facts and defendants' response to that statement,

5  evidence cited in those statements as well as the court's review of the record.  *See* ECF No. 50.

6  The court treats these facts as undisputed unless otherwise stated.[1]  The parties may object to the

7  evidence cited as proving the undisputed facts, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–

8  86 (9th Cir. 2010), and the court notes and resolves evidentiary objections below.

9          1.      Evidentiary Objections

10             Defendants object to plaintiff's declaration in opposition to summary judgment,

11 asserting the declaration impermissibly contradicts plaintiff's sworn deposition testimony.  Reply,

12 ECF No. 54, at 9–10.  Defendants cite *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th

13 Cir. 1991), for the proposition that "a party cannot create an issue of fact by an affidavit

14 contradicting his prior deposition testimony."  This rule, however, "does not automatically

15 dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier

16 deposition testimony."  *Id.* at 266–67.  To invoke the rule, a district court must first determine that

17 the contradiction is a "sham" used to "'create' an issue of fact and avoid summary judgment."  *Id.*

18 at 267.  Then, the court must determine the inconsistency is "clear and unambiguous" to justify

19 striking an affidavit.  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir. 2009).  An

20 affidavit that elaborates on, explains, or clarifies deposition testimony is not a sham.  *Id.* at 999

21 (quoting *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995)).

22             In his declaration, plaintiff claims he told Torres, shortly after being secured in the

23 patrol vehicle, "the handcuffs are really tight–they're hurting my wrists" and asked Torres to

24 loosen them, yet Torres ignored his request.  Buckhalter Decl., ECF No. 53-1, ¶ 4.  In his

25 deposition, plaintiff testified he told Torres he "needed to go to the hospital" because his arm was

26

---

27 [1] Plaintiff accepts defendants' statement of facts, with the addition of facts from plaintiff's declaration.  Opp'n, ECF No. 53-1, at 1.

28

2

"inflamed," but he did not mention the pain to anyone else; he said he felt the pain only in his left arm from his shoulder to his elbow. Buckhalter Dep. 91:6–92:18, ECF No. 49. Plaintiff further testified he asked Torres to loosen the handcuffs two times after leaving the hospital. Buckhalter Dep. 151:4–18. Defendants argue plaintiff's declaration is contradictory because plaintiff affirmatively states in his declaration he twice requested Torres loosen the handcuffs on his wrists, once before they arrived at the hospital and once after leaving the hospital, and Torres ignored both requests; yet in his deposition plaintiff testified he made both requests after leaving the hospital and never told Torres he was experiencing pain due to the handcuffs being too tight or requested Torres loosen the handcuffs prior to arriving at the hospital. Reply at 9–10.

The court finds plaintiff's declaration flatly contradicts his deposition testimony. Plaintiff testified he told Torres he "needed to go to the hospital" because "[his] arm was inflamed," but did not say anything else to Torres and did not speak to anyone else prior to arriving at the hospital. Buckhalter Dep. 91:9–92:2. Further, when asked during his deposition if he was "feeling pain . . . [a]nywhere else" other than his left shoulder, plaintiff responded "no." Buckhalter Dep. 92:12–18. Finally, plaintiff testified he twice asked Torres to loosen the handcuffs, making both requests after they left the hospital. Buckhalter Dep. 151:4–18. This testimony directly contradicts plaintiff's statements in his declaration that he told Torres the handcuffs were hurting his wrists and asked Torres to loosen them before they arrived at the hospital. Buckhalter Decl. ¶ 4. The court also notes the timing of plaintiff's declaration, which was signed on the day on which plaintiff filed his opposition to defendants' summary judgment motion, suggests plaintiff authored the declaration for the purpose of creating, or at least bolstering, a dispute of material fact.

For these reasons, the court STRIKES plaintiff's declaration.

### 2. Undisputed Facts

On September 9, 2016, plaintiff and his wife were moving from their home in Vacaville, California, to Georgia. SUF 1. Plaintiff owned numerous vehicles and had moved six of his cars, including a Chevrolet Monte Carlo, out of the garage and parked them on the street

near the park located across the street from his residence to allow movers to pack and load the moving truck.  SUF 3–4.

At or about 5:00 p.m., plaintiff went to move the Monte Carlo to a vehicle transport truck being used to transport his cars to Georgia.  SUF 5–6.  After starting the car, it "balked," and instead of stopping, plaintiff "mashed" on the gas to prevent it from stalling.  SUF 7; Buckhalter Dep. 64:22–65:17.  The car made a screeching noise and the tires spun or "jerked," leaving rubber marks on the pavement as plaintiff parked the car behind the transport truck. SUF 7, 9; Buckhalter Dep. 65:3–5, 66:15–67:16, 72:14–15.  Coincidentally, defendant Canady, an off-duty Vacaville police officer, was at the park and observed plaintiff's alleged "burn out" as children played on the adjacent sidewalk and in the adjacent park.  From Officer Canady's perspective, plaintiff's activity violated California Vehicle Code section 23109, which prohibits speed contests and exhibitions of speed.[2]  SUF 8; Canady Decl. ¶¶ 2–6, ECF No. 47.

When plaintiff exited the Monte Carlo, Canady approached and advised plaintiff he was driving the vehicle in an unlawful and irresponsible manner, and that he faced possible arrest for violation of section 23109.  SUF 10.  Canady also told plaintiff he was an off-duty police officer.  SUF 11.  Plaintiff did not believe Canady was an off-duty police officer but did apologize and assured Canady there would no further incident.  SUF 12–13.  A few minutes later, after Canady returned to the park, Canady thought he heard plaintiff yell, "I'll be back!," but Canady did not know whether this statement was intended as a threat toward him.  SUF 14; Canady Decl. ¶¶ 9–10.  Canady then called the Vacaville Police Department, requested assistance from a uniformed officer and recommended plaintiff be arrested for violating section 23109.  SUF 14.

Approximately five minutes later, a uniformed officer, defendant Torres, arrived in a police car and began talking with Canady.  SUF 15.  At this time, plaintiff walked across the

_____

[2] Subdivision (c) of Vehicle Code section 23109 provides: "A person shall not engage in a motor vehicle exhibition of speed on a highway, and a person shall not aid or abet in a motor vehicle exhibition of speed on any highway."  The Vehicle Code defines a "Highway" as "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel.  Highway includes street."  Cal. Veh. Code § 360.

street toward the officers.  SUF 15.  As plaintiff approached, Officer Torres said, "Hold on a minute," so plaintiff stopped and stood by the back of the Monte Carlo, then sat on the trunk of the car until Torres approached him.  SUF 16; Buckhalter Dep. 71:14–19, 72:16–23.  Torres recorded his interaction with plaintiff on his body camera, which was attached to his chest.  SUF 17.  Plaintiff admitted to Torres it was inappropriate to be doing burn outs on the street near the park and children, explained the car had balked, and the tires spun out and apologized.  SUF 18–19; Buckhalter Dep. 72:24–73:7; Torres Decl. Ex. A (Body Camera Video of Incident), ECF No. 48, time stamp 0:00–0:25.  Torres observed black tire tread marks on the roadway.  SUF 20.

Officer Torres then told plaintiff he would issue him a citation for his reckless driving, and at that point plaintiff became very angry.  SUF 21.  Plaintiff told Torres he "was going to knock [Canady] out" after Torres finished issuing the citation.  SUF 22; Buckhalter Dep. 73:8–74:11, 74:19–75:6.  Plaintiff then said, while motioning toward Canady, "You're going to also have to arrest me, because I'm going to knock him out as soon as this is over.  If you run my record, you know, I don't have no felonies, no warrants.  I have a lot of assaults and he's going to get assaulted as soon as you leave."  SUF 23; Torres Decl. ¶ 8 & Ex. B (Body Camera Video of Incident), ECF No. 48, time stamp 0:45–1:10.  When Torres told plaintiff to sit on the curb, plaintiff became increasingly agitated, refused to comply and said, "Why should I have to sit on the curb?"  SUF 24; Buckhalter Dep. 76:10–77:11; Torres Decl. ¶ 10 & Ex. B, time stamp 1:10–1:42.  Torres twice asked plaintiff to sit on the curb before plaintiff complied.  SUF 25–26.

In light of plaintiff's "aggressive and agitated behavior" and threats to physically assault Canady, and out of concern for officer safety, Officer Torres decided to place plaintiff in handcuffs.  SUF 27; Torres Decl. ¶ 13.  Torres ordered plaintiff to place his hands on top of his head, but plaintiff did not comply.  SUF 28.  After several orders, plaintiff placed his hands on his head, but then quickly removed them and brought them in front of his body before placing them on top of his head again.  SUF 28.  Torres placed one handcuff on plaintiff's right wrist while plaintiff's hands were on top of his head and proceeded to pull plaintiff's arms behind his back to secure plaintiff's left wrist behind his back.  SUF 29.  Plaintiff then said, "I got a rotator cuff, you see my shoulder," and pulled his left hand from Torres's grip and toward the front of his body.

SUF 30; Torres Decl. ¶ 16 & Ex. B, time stamp 2:27–2:33.  Plaintiff's movement of pulling his

arm from Torres's grip caused the body camera to fly off of Torres's body and onto the ground,

which caused the video to stop recording.  SUF 31.  Plaintiff admits he attempted to position and

move his arms to avoid being handcuffed.  SUF 32; Buckhalter Dep. 145:8–146:14.

Canady observed the interaction between plaintiff and Officer Torres and became

concerned for Torres's safety.  SUF 34–35.  Based on his observations, Canady determined he

needed to assist Torres in securing plaintiff in handcuffs.  SUF 36.  Canady approached and used

his right knee to lean on plaintiff's left side to roll him onto his stomach so Torres could handcuff

plaintiff's left wrist.  SUF 37.  Plaintiff claims Torres told Canady to leave, and Canady then left

the scene and had no other involvement in plaintiff's arrest.  SUF 38–39.  The only force Torres

used during the incident was bringing plaintiff's hands behind plaintiff's back to secure him in

handcuffs.  SUF 40.  Torres secured plaintiff in handcuffs by 5:11 p.m.  SUF 56.

After cuffing plaintiff's hands behind his back, Officer Torres lifted plaintiff up to

place him in his police car.  SUF 43.  Due to plaintiff's claimed shoulder surgery, Torres placed

plaintiff in two sets of handcuffs, securing one cuff from each set on plaintiff's wrists and linking

the remaining cuffs from each set together to form one larger set and reduce the stress on

plaintiff's shoulder.  SUF 44.  Torres checked the handcuffs on plaintiff's wrists for tightness and

ensured each cuff was tight enough so it could not be slipped, but not too tight to affect plaintiff's

circulation.  SUF 44.  Torres double-locked each handcuff on plaintiff's wrists to ensure the cuffs

would not inadvertently become tighter.  SUF 44.

Once secured in the police vehicle, plaintiff told Officer Torres his shoulder was

hurting.  SUF 47; Buckhalter Dep. 91:6–23.  Plaintiff did not tell anyone other than Torres about

his shoulder or that he was feeling pain.  SUF 48; Buckhalter Dep. 91:24–92:2.  Torres then took

plaintiff to the hospital to be examined within fifteen minutes of leaving plaintiff's residence,

arriving at the hospital at 5:37 p.m.  SUF 49, 56.  Due to plaintiff's prior agitated state, active

resistance at the scene, his threats to assault and "knock out" a police officer and his self-reported

history of "a lot of assaults," Torres determined it was necessary to keep plaintiff secured in

handcuffs behind his back while at the hospital to avoid any violent attacks against hospital

personnel or himself, and to avoid further resistance from plaintiff.  SUF 50; Torres Decl. ¶ 26.  Prior to taking X-rays of plaintiff's shoulder, plaintiff avers a doctor twice asked Torres to remove plaintiff's handcuffs, but Torres refused both requests.  Buckhalter Dep. 93:22–94:4.  After the X-rays were taken, the same doctor reported that plaintiff's shoulder looked okay and was just inflamed.  SUF 49.  Plaintiff claims the doctor suggested putting his arm in a sling, but Torres would not remove the handcuffs and told the doctor he would take the sling with plaintiff's property.  SUF 49; Buckhalter Dep. 94:9–16.

Plaintiff claims that, rather than taking plaintiff directly to jail from the hospital, Officer Torres then responded to other service calls, picked up other suspects in unrelated incidents and transported them to jail with plaintiff.  SUF 52; Buckhalter Dep. 96:1–21.  Torres kept plaintiff secured in handcuffs behind his back during transport from the hospital to the jail due to his aggressive, threatening and resistive behavior and his self-reported history of "a lot of assaults."  SUF 53; Torres Decl. ¶ 27.  Plaintiff claims he twice asked Torres to loosen the handcuffs after leaving the hospital, but Torres said no because plaintiff would be in lockup soon.  SUF 54; Buckhalter Dep. 149:10–150:5, 151:19–23.  Plaintiff further claims another two hours elapsed, however, before plaintiff was booked into jail, at approximately 12:07 a.m. on September 10, 2016.  SUF 54–55; Buckhalter Dep. 97:3–9, 149:10–150:5.  Although the computer-aided dispatch ("CAD") report of the incident shows plaintiff arrived at the Solano County Jail at 8:58 p.m., SUF 56; Torres Decl. Ex. C., ECF No. 48, for purposes of the instant motion, defendants accept plaintiff's claim that he was booked into the jail at 12:07 a.m.  Reply at 3.  Plaintiff was thus secured in handcuffs from at or about 5:11 p.m. until 12:07 a.m., slightly less than seven hours in total.  Plaintiff was released from jail at approximately 4:00 a.m. on September 10th.  SUF 57.

B.   Procedural Background

Plaintiff brings claims against defendants Torres and Canady under 42 U.S.C. § 1983 and state law.  Second Am. Compl. ("SAC"), ECF No. 37, ¶¶ 49–113.  Specifically, plaintiff alleges excessive force in violation of the Fourth Amendment, failure to protect from harm in violation of the Fourteenth Amendment, battery, assault, intentional infliction of emotional distress ("IIED"), negligence for infliction of emotional distress and physical harm

7

("NIED") and violation of the Bane Act, Cal. Civ. Code § 52.1. *Id.* Defendants move for summary judgment on all claims. ECF No. 46. Plaintiff has filed an opposition, ECF No. 53, and defendants filed a reply, ECF No. 54.

II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to show "there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986) (citing Fed. R. Civ. P. 56(e); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). Also, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz.*, 391 U.S. at 289). Where a genuine dispute exists, the court draws inferences in plaintiffs' favor. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014) (per curiam). Parties may object to evidence cited to establish

undisputed facts. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 385–86. A court may consider evidence that would be "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)). But the evidentiary standard for admission at the summary judgment stage is lenient: A court may evaluate evidence in an inadmissible form if the evidentiary objections could be cured at trial. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006). In other words, admissibility at trial depends not on the evidence's form, but on its content. *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 385–86. However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255 (citing *Kennedy v. Silas Mason Co.*, 344 U.S. 249 (1948)). A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-cv-05847-WHO, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

III.     DISCUSSION

      A.     Plaintiff's Conceded Claims

As a preliminary matter, in his opposition and at hearing, plaintiff conceded summary judgment on all claims against defendant Canady and on his state law assault, IIED and NIED claims as to Officer Torres. Opp'n at 2. The court accordingly GRANTS summary judgment on these claims and turns to plaintiff's remaining claims against defendant Torres.

      B.     Federal Claims

          1.     Fourth Amendment: Excessive Force

Defendants seek summary judgment on plaintiff's first claim for excessive force in violation of the Fourth Amendment. Mot. at 8–10. Defendants assert plaintiff's claim fails as a matter of law and that Torres also is entitled to qualified immunity. Mot. at 8–10, 13–18. The court first analyzes the merits of the claim and then addresses qualified immunity in a separate section below. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (it is "often beneficial" to begin with first part of the qualified immunity test because it "promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable"); *see also Ioane v. Hodges*, 903 F.3d 929, 933 (9th Cir. 2018) (same (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014)).

The Fourth Amendment "guarantees citizens the right to be secure in their persons . . . against unreasonable . . . seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (internal quotations omitted). "'[R]easonableness is always the touchstone of Fourth Amendment analysis,' and reasonableness is generally assessed by carefully weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017) (alteration in original) (internal citations omitted) (quoting first *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2186 (2016), then *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

The guarantees of the Fourth Amendment include protection from the use of excessive force by "law enforcement officers . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." *Graham*, 490 U.S. at 395. To assess whether defendants used excessive force, the court examines "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them" and "balance[s] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396–97 (internal quotations omitted). In striking this balance, the court "must consider the risk of bodily harm that [defendants'] actions posed to [plaintiff] in light of the threat to the public that [defendants] w[ere] trying to eliminate." *Scott v. Harris*, 550 U.S. 372, 383 (2007). The court pays "careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8–9). "Because this inquiry is inherently fact specific, the 'determination whether the force used to effect an arrest [or seizure] was reasonable under the Fourth Amendment should only be taken from the jury in rare cases.'" *Green v. City and County. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (quoting *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1205–06 (9th Cir. 2000), *cert. granted, judgment vacated on other grounds*, 534 U.S. 801 (2001)).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). Further, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "Therefore, courts 'are free to consider issues outside the three enumerated [in *Graham*] when additional facts are necessary to account for the totality of circumstances in a given case.'"

*Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015) (alteration in original) (quoting *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)).

Plaintiff does not dispute the reasonableness of the force used to effect his arrest. *See* Opp'n at 2. Rather, plaintiff argues that regardless of the reasonableness of plaintiff's initial handcuffing, Officer Torres handcuffed plaintiff too tightly, did not readjust the handcuffs when plaintiff complained of pain, and kept plaintiff in handcuffs for an unnecessarily long time and at least two hours after plaintiff told Torres the cuffs were too tight. Opp'n at 2. Defendants argue Torres's conduct was objectively reasonable under the totality of the circumstances. Reply at 1.

The Ninth Circuit has held that excessively tight handcuffing can, depending on the circumstances, constitute a Fourth Amendment violation. *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002). Although the level at which tight handcuffing becomes unconstitutional is not well-defined, plaintiffs have raised triable issues of fact when the handcuffs caused demonstrable injury or visible pain, or when officers ignored or refused requests to loosen the handcuffs once alerted that the handcuffs were too tight. *See, e.g.*, *Wall v. County of Orange*, 364 F.3d 1107, 1109–12 (9th Cir. 2004) (arrestee suffered nerve damage due to continued restraint in tight handcuffs); *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) (arrestee complained to officer who refused to loosen handcuffs); *Palmer v. Sanderson*, 9 F.3d 1433, 1434–36 (9th Cir. 1993) (officer ignored arrestee's complaints despite his handcuffed wrists being visibly discolored); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (arrestee had bruises on her wrists). "The issue of tight handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses." *LaLonde*, 204 F.3d at 960. Thus, summary judgment is generally not appropriate. *Id. But see Luong v. City & County of San Francisco*, No. C11–5661 MEJ, 2012 WL 5869561, at *5 (N.D. Cal. Nov. 19, 2012) (finding no triable issue of fact when plaintiff's "only evidence to support his excessive force claim [wa]s his testimony that the handcuffs were too tight and caused him a slight abrasion"); *Shaw v. City of Redondo Beach*, No. CV 05-0481 SVW (FMOx), 2005 WL 6117549, at *9 (C.D. Cal. Aug. 23, 2005) (granting defendants summary judgment when arrestee "did not repeatedly request to have the handcuffs

removed or loosened, was not in any demonstrable pain, did not complain of pain or inform [the officer] of any pre-existing injuries, and was not pushed or shoved").

        Viewing the facts in the light most favorable to plaintiff, a reasonable jury could find the manner in which Torres handcuffed plaintiff constituted unreasonable force. As noted above, plaintiff testified at deposition that he twice requested Torres loosen the handcuffs while in the patrol vehicle, yet Torres refused both requests. Buckhalter Dep. 149:10–17, 149:22–50:5, 151:4–18. Plaintiff also testified, and defendants accept as true for purposes of this motion, that Torres kept plaintiff secured in handcuffs for approximately seven hours despite plaintiff's complaints, from the time of his arrest at or about 5:11 p.m. until Torres booked plaintiff into jail at or about 12:07 a.m. Reply at 3; Buckhalter Dep. 97:6–9; Torres Decl. ¶¶ 25, 27. Finally, plaintiff and his wife testified he sustained more severe injuries to his right hand and wrist from the handcuffing; specifically they say plaintiff suffered a "handcuff scar" on the base of his thumb, which was still visible at the time of plaintiff's deposition more than two years after the incident, and possibly permanent nerve damage. Buckhalter Dep. 135:1–13, 153:18–54:20, 167:16–68:5, 170:7–11; Regina Dep. 66:20–67:2, ECF No. 49. Plaintiff described the injury as a "pinched nerve" that causes his right hand and wrist to lose feeling and fall "asleep" whenever relaxed; he testified he experiences numbness and throbbing in his right hand. Buckhalter Dep. 154:10–20, 167:16–68:5, 169:14–70:4; *see also* Regina Dep. 64:10–17 (testifying plaintiff, her husband, "says [his hand] feels like it's going dead . . . . He says it feels like it's kind of a numbness and then it comes back [to life]"). Although plaintiff has not provided medical records or other evidence to supplement the statements made in his deposition, a reasonable jury could find that plaintiff's injuries, coupled with the fact that he twice asked Torres to adjust the handcuffs, suffice to demonstrate a constitutional injury.

        Defendants contend this case is distinguishable from those in which a genuine issue of fact remained on the issue of handcuffing because plaintiff here behaved in an angry and agitated manner, threatened violence against the officers, did not comply with Torres's order and physically resisted efforts to handcuff him. Reply at 2–3. While undisputed, these facts pertaining to plaintiff's pre-arrest conduct do not justify handcuffing plaintiff so tightly that he

suffered pain and injury to his hands and wrists, or justify Torres's refusal to loosen the handcuffs once plaintiff was secured in the patrol vehicle and had complained of the pain.  Notably, defendants have not provided evidence of plaintiff's making further threats, physically resisting or engaging in other violent or noncompliant conduct after his arrest.

At hearing, defense counsel also argued this case is distinguishable from other previously decided cases because Torres checked the handcuffs on plaintiff's wrists for tightness to ensure the handcuffs did not cut off plaintiff's circulation or cause pain.  *See* SUF 44.  Defendants present no evidence, however, showing that after plaintiff complained about the tightness of the handcuffs, Torres loosened the handcuffs, checked their tightness or otherwise determined the cuffs were appropriately tight during the nearly seven hours plaintiff was handcuffed.  Accordingly, "a reasonable jury could find that [Torres] used an unreasonable amount of force in handcuffing [plaintiff] and as a result violated h[is] Fourth Amendment rights." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003); *see Wall*, 364 F.3d at 1112 (holding overly tight handcuffing can constitute excessive force when it causes injury or when officers ignore plaintiff's complaints about handcuffs being too tight).

### 2.      Fourteenth Amendment: Failure to Protect from Harm

Although plaintiff asserts separate Fourth and Fourteenth Amendment claims against defendant Torres in the Second Amended Complaint, ECF No. 37, plaintiff's opposition makes clear he bases both claims on the manner in which Torres secured plaintiff in handcuffs.  Specifically, plaintiff contends Torres violated plaintiff's Fourth and Fourteenth Amendment rights by refusing to loosen plaintiff's handcuffs after plaintiff put Torres on notice that the handcuffs were too tight and by keeping plaintiff in handcuffs significantly longer than necessary.  Opp'n at 3.  As with plaintiff's Fourth Amendment claim, defendants argue Torres's conduct was objectively reasonable under the totality of the circumstances.  Reply at 3–5.

Federal courts analyze constitutional claims brought by pretrial detainees challenging their conditions of confinement under the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Or. Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1120

14

(9th Cir. 2003) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Bell*, 441 U.S. at 535 & n.16).  The Eighth Amendment's deliberate indifference standard, however, sets the minimum standard of care for determining the rights of pre-trial detainees.  *Or. Advocacy Ctr.*, 322 F.3d at 1120 (citing cases).  To establish liability against an individual defendant under the Fourteenth Amendment for failure to protect from harm, a plaintiff must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (footnote omitted). Notably, following the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), the court applies the same objective reasonableness standard to a plaintiff's Fourteenth Amendment claim as to his Fourth Amendment claim.  *Robinson v. County of Shasta*, No. 2:14-CV-02910-KJM-KJN, 2019 WL 1931879, at *8; *see also Castro*, 833 F.3d at 1071 ("With respect to the third element, the defendant's conduct must be objectively unreasonable . . . ." (citing *Kingsley*, 135 S. Ct. at 2473).

As described above, a reasonable jury could find Officer Torres's use of force was objectively unreasonable.  Therefore, the court cannot determine defendant Torres is entitled to judgment as a matter of law on plaintiff's Fourteenth Amendment claim for failure to protect from harm.

### 3. Qualified Immunity

Defendants contend Torres is entitled to qualified immunity on plaintiff's Fourth Amendment excessive force and Fourteenth Amendment failure to protect claims.  Mot. at 16–18;

Reply at 6–8. "Qualified immunity is a judge-made doctrine[3] designed to 'balance[ ] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011) (alteration in original) (quoting *Pearson*, 555 U.S. at 231). The doctrine is intended to "give[ ] government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

To determine whether qualified immunity applies, the court follows a two-pronged test first articulated in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). *Pearson*, 555 U.S. at 232 (citing *Saucier*, 533 U.S. at 201). Under that test, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656 (citing cases).[4] "This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 249); *see also Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005) ("'[T]he ordinary framework for deciding motions for summary judgment' applies to motions for summary judgment based on official immunity.") (alteration in original) (citing *Butler v. San Diego Dist. Atty.'s Office*, 370 F.3d 956, 963 (9th Cir. 2004)). In particular, in determining the established law, the court must take care not to define either the right at issue, or the defendant's conduct for

---

[3] In light of the judicial origins of the doctrine, the Supreme Court has observed "[a]ny change should come from this Court, not Congress." *Pearson*, 555 U.S. at 234.

[4] In *Tolan*, the Fifth Circuit erred by failing "to view the evidence at summary judgment in the light most favorable to Tolan with respect to the central facts of this case." 572 U.S. at 658.

that matter, in a manner that impermissibly resolves factual disputes. *Tolan*, 572 U.S. at 657

("[C]ourts must take care not to define a case's 'context' in a manner that imports genuinely

disputed factual propositions.") (citing *Brosseau v. Haugen*, 543 U.S. 194, 195 (2004) (per

curiam)).

Courts may "exercise their sound discretion in deciding which of the two prongs of

the qualified immunity analysis should be addressed first in light of the circumstances in the

particular case at hand." *Pearson*, 555 U.S. at 236. Here, the court has exercised its discretion by

first analyzing the merits prong as detailed above. Therefore, whether qualified immunity applies

to Torres turns on the application of the second prong of the test.

a. Clearly Established Law

Turning to the second prong of the qualified immunity analysis, the court notes

that clearly established law must be defined with a "high 'degree of specificity.'" *District of

Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309

(2015) (per curiam)). This standard is "demanding"; the "legal principle [at issue] must have a

sufficiently clear foundation in then-existing precedent." *Id.* at 589. It "must be settled law,

which means it is dictated by controlling authority or a robust consensus of cases of persuasive

authority," rather than merely "suggested by then-existing precedent." *Id.* at 589–90 (internal

quotations and citations omitted).

While "a case directly on point" is not required "for a right to be clearly

established, existing precedent must have placed the statutory or constitutional question beyond

debate," *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548,

551 (2017)), and must "'squarely govern[ ]' the specific facts at issue." *Id.* at 1153 (citing

*Mullenix*, 136 S. Ct. at 309); *see also Pike v. Hester*, 891 F.3d 1131, 1141 (9th Cir. 2018) ("An

exact factual match is not required . . . ." (citing *Calabretta v. Floyd*, 189 F.3d 808, 812 (9th Cir.

1999)). "The rule's contours must be so well defined that it is 'clear to a reasonable officer that

his conduct was unlawful in the situation he confronted.'" *Wesby*, 138 S. Ct. at 590 (quoting

*Saucier*, 533 S. Ct. at 202). Thus, "[t]he dispositive question is 'whether the violative nature of

*particular* conduct is clearly established.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Mullenix*, 136 S. Ct. at 308) (emphasis and alteration in original).

"Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix*, 136 S. Ct. at 312). Although "'general statements of the law are not inherently incapable of giving fair and clear warning to officers,' . . . . constitutional guidelines [that] seem inapplicable or too remote" will not suffice. *Id.* (quoting *White*, 137 S. Ct. at 552). Accordingly, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'" *Ziglar*, 137 S. Ct. at 1867 (quoting *Saucier*, 533 U.S. at 202).

In certain cases, qualified immunity may not be available to a defendant even if a new set of circumstances is presented to the court through a civil rights claim. "[T]here can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 138 S. Ct. at 590 (citing *Brosseau*, 543 U.S. at 199); *see also Ziglar*, 137 S. Ct. at 1867 ("[A]n officer might lose qualified immunity even if there is no reported case 'directly on point.' But 'in the light of pre-existing law,' the unlawfulness of the officer's conduct 'must be apparent'" (internal citation omitted) (quoting first *al-Kidd*, 563 U.S. at 741, then *Anderson*, 483 U.S. at 640)). In some circumstances "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *Bonivert v. City of Clarkston*, 883 F.3d 865, 872 (9th Cir. 2018) (alteration in original) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

Because resolving whether the asserted federal right was clearly established presents a pure question of law, the court draws on its "full knowledge" of relevant precedent rather than restricting its review to cases identified by plaintiff. *See Elder v. Holloway*, 510 U.S. 510, 514–16 (1994) (citing *Davis v. Scherer*, 468 U.S. 183, 192 n.9 (1984)). In doing so, the court "first look[s] to binding [Supreme Court or Ninth Circuit] precedent to determine whether a law was clearly established." *Ioane*, 903 F.3d at 937 (citing *Chappell v. Mandeville*, 706 F.3d

1052, 1056 (9th Cir. 2013)); *see also Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1221 n.13 (9th Cir. 2015) (noting that in *Hope v. Pelzer*, 536 U.S. 730, 741–45 (2002), the Supreme Court looked to "binding circuit precedent" to determine clearly established law, and the Court has not yet "overruled *Hope* or called its exclusive reliance on circuit precedent into question"). If no binding precedent "is on point, [the Ninth Circuit] may consider other decisional law." *Chappell*, 706 F.3d at 1056. Ultimately, "the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). That said, the Ninth Circuit has approved of the use of unpublished and district court decisions to inform qualified immunity analysis in conjunction with controlling authority. *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002) ("We have held that unpublished decisions of district courts may inform our qualified immunity analysis." (citing *Prison Legal News v. Cook*, 238 F.3d 1145, 1152 (9th Cir. 2001)).

b. Discussion

Defendants' qualified immunity argument focuses on plaintiff's pre-arrest conduct: his agitated state, threats to assault police officers, failure to comply with orders to sit on the curb and put his hands on his head and physical resistance to handcuffing. Mot. at 16–17; Reply at 8. Defendants contend no clearly established law prohibited them from using tight handcuffs in these circumstances. Mot. at 16–17; Reply at 5–6. Plaintiff counters that Ninth Circuit precedent "put Defendant Torres on clear notice" that his unnecessarily tight handcuffing and refusal to loosen plaintiff's handcuffs violated plaintiff's constitutional rights. Opp'n at 3–5.

Applying the principles described above to this case, by September 2016 it was clearly established that excessively tight handcuffing, particularly when an arrestee complains about the tightness of the handcuffs, can constitute objectively unreasonable force in violation of the Fourth and Fourteenth Amendments. *See Wall*, 364 F.3d at 1112 (citing *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322–23 (9th Cir. 1995)); *Meredith*, 342 F.3d at 1061, 1063–64; *LaLonde*, 204 F.3d at 960; *Alexander*, 64 F.3d at 1322–23.

In *Wall*, the court found the officer in that case violated a clearly established constitutional right because he not only "used excessive force in making the arrest" but also by "continuing the restraint by handcuffs that hurt and damaged [the plaintiff's] wrist." 364 F.3d at 1112. The plaintiff was complying with the officer's order to leave the scene when the officer "grabbed [the plaintiff] by his right wrist and bent and twisted his arm, causing pain," handcuffed the plaintiff's hands "extremely tight" behind his back, picked the plaintiff up by his handcuffed arms, threw the him "upside down" and "head first" into a patrol car and left the plaintiff waiting in the patrol car for about twenty minutes. *Id.* at 1109–10. Similarly, in *LaLonde*, the court held the officers were not entitled to qualified immunity when they required the plaintiff, despite having "already surrendered" and being "under control," to sit handcuffed on a couch with pepper spray burning his face for twenty to thirty minutes, during which time the officers refused to loosen the handcuffs despite the plaintiff telling them the handcuffs were cutting off his circulation and the pepper spray was burning. 204 F.3d at 952, 960; s*ee also Meredith,* 342 F.3d at 1060, 1061 (officer not entitled to qualified immunity on allegation of overly tight handcuffing of woman detained during execution of search warrant when officer did not respond for thirty minutes to plaintiff's complaints handcuffs were too tight and causing pain); *Alexander*, 64 F.3d at 1322–23 (holding qualified immunity defense not available to officers when (1) officers handcuffed plaintiff for forty-five to sixty minutes, (2) waited thirty-five to forty minutes before adjusting handcuffs, despite plaintiff's repeated requests that handcuffs be removed or loosened because he was dialysis patient, and (3) plaintiff's hands still swollen and numb nine months after incident); *Palmer*, 9 F.3d at 1436 (affirming denial of qualified immunity when officer "fastened [the plaintiff's] handcuffs so tightly around his wrist that they caused [the plaintiff] pain and left bruises that lasted for several weeks" and "presented no evidence that would justify handcuffing [the plaintiff] so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after [the plaintiff] complained of the pain").

Given the clearly established law regarding excessively tight handcuffing, a reasonable officer in Torres's position would have known that to place and keep plaintiff in handcuffs so tight they caused him unnecessary pain, despite plaintiff's requests to loosen the

handcuffs, violated plaintiff's Fourth and Fourteenth Amendment rights. Plaintiff asserts he was handcuffed with his arms behind his back for almost seven hours, despite making two requests to loosen the handcuffs. SUF 54–56; Opp'n at 3, 4. Further, although plaintiff initially resisted his arrest, nothing in the record suggests he was not compliant once Torres secured him in the patrol vehicle. *See* SUF 43–57. Based on these facts, and drawing all inferences in favor of plaintiff as the non-moving party, the court concludes Torres is not entitled to qualified immunity.

The court DENIES summary judgment as to plaintiff's § 1983 claims against Torres.

### C.    State Law Claims

Defendants contend plaintiff cannot withstand summary judgment on his state law claims for battery, assault, IIED, NIED or violation of California Civil Code section 52.1, the Bane Act. Mot. at 15–18. Defendants primarily argue these state law claims fail because defendant Torres acted reasonably. *Id.* at 15–16. Plaintiff concedes his assault, IIED and NIED claims, but otherwise disputes defendants' contentions. Opp'n at 2, 6–7.

#### 1.    Battery

Under California law, a claim for battery by a peace officer requires the plaintiff to show: "(1) the defendant intentionally touched the plaintiff, (2) the defendant used unreasonable force to arrest, prevent the escape of, or overcome the resistance of the plaintiff, (3) the plaintiff did not consent to the use of that force, (4) the plaintiff was harmed, and (5) the defendant's use of unreasonable force was a substantial factor in causing the plaintiff's harm." *Pryor v. City of Clearlake*, 877 F. Supp. 2d 929, 952 (N.D. Cal. 2012) (citing Judicial Council of California, Civil Jury Instruction 1305; *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998)). Accordingly, "[p]laintiff must prove unreasonable force as an element of the tort." *Edson*, 63 Cal. App. 4th at 1273. The unreasonable force determination is "analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution." *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 & n.6 (2004) (citing *Graham*, 490 U.S. at 395), *overruled on other grounds*, *Hayes v. County of San Diego*, 57 Cal. 4th 622, 636 (2013).

Defendants contend plaintiff cannot prevail on his battery claim because Torres used reasonable force under the totality of the circumstances. Mot. at 18. But as stated above, a reasonable jury could find defendants' conduct was unreasonable. The court therefore DENIES defendants' motion for summary judgment on plaintiff's battery claim against Torres.

### 2. Assault

As noted, plaintiff concedes his assault claims against both Canady and Torres. Opp'n at 2. Therefore, the court GRANTS summary judgment as to these claims.

### 3. IIED

Plaintiff also concedes his IIED claims against both Canady and Torres. Opp'n at 2. Therefore, the court GRANTS summary judgment as to these claims.

### 4. NIED

Plaintiff additionally concedes his NIED claims against both Canady and Torres. Opp'n at 2. Therefore, the court GRANTS summary judgment as to these claims as well.

### 5. Bane Act

Defendants argue the court should grant summary judgment on plaintiff's section 52.1 claim against defendant Torres because the evidence establishes Torres did not violate plaintiff's civil rights under the Fourth or Fourteenth Amendments. Mot. at 21–22.

The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by threats, intimidation, or coercion." *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (internal quotations omitted) (quoting *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014)). "Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims." *Id.* at 1040–41 (citing *Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230, 1246 (2007)). To establish a Bane Act claim, a plaintiff must prove "(1) a violation of a 'state or federal constitutional or legal right'; and (2) that the violation was achieved through 'threats, intimidation, or coercion.'" *Inman v. Anderson*, 294 F. Supp. 3d 907, 928 (N.D. Cal. 2018) (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)).

Although there has been some lack of clarity regarding whether the Bane Act requires more than a finding of a constitutional violation, the Ninth Circuit recently adopted the position that the Bane Act also requires "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese*, 888 F.3d at 1043 (internal quotations omitted) (quoting *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 801 (2017)). "Evidence simply showing that an officer's conduct amounts to a constitutional violation under an 'objectively reasonable' standard is insufficient to satisfy the additional intent requirement under the Bane Act." *Losee v. City of Chico*, 738 F. App'x 398, 401 (9th Cir. June 18, 2018) (citing *Reese*, 888 F.3d at 1045). "Rather, [the plaintiff] must show that [the officer] 'intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances.'" *Id.* (quoting *Reese*, 888 F.3d at 1045). Here, plaintiff proffered no such evidence.

Accordingly, the court GRANTS summary judgment as to this claim against Torres. *See id.*

6. Discretionary Immunity

Defendants also argue California Government Code sections 820.2 and 820.8 afford defendant Torres immunity for his assessment of the situation, his assessment that plaintiff posed a safety risk and his tactical decisions, including the decision to handcuff plaintiff. Mot. at 22. Under California law, however, discretionary immunity applies only to "*deliberate* and *considered* policy decisions," not operational decisions such as "a bus driver's decision not to intervene in one passenger's violent assault against another" or "a police officer's negligent conduct of a traffic investigation once undertaken." *Caldwell v. Montoya*, 10 Cal. 4th 972, 981– 82 (1995) (emphasis in original) (citations omitted). Further, a police officer does not have discretionary immunity from liability for the use of unreasonable force in making an arrest or overcoming resistance to it. *Conway v. County of Tuolumne*, 231 Cal. App. 4th 1005, 1015 (2014) (citing *Scruggs v. Haynes*, 252 Cal. App. 2d 256, 264–68 (1967)). Rather, "immunity under section 820.2 turns on the reasonableness of the conduct complained of, not simply whether or not a public employee exercised his or her discretion." *Stoddard-Nunez v. City of Hayward*, No. 3:13-cv-4490 KAW, 2013 WL 6776189, at *10 (N.D. Cal. Dec. 23, 2013).

A reasonable jury could find Torres used an unreasonable amount of force in handcuffing plaintiff. Accordingly, sections 820.2 and 820.8 do not afford Torres immunity.

IV.    CONCLUSION

As set forth above, the court GRANTS IN PART and DENIES IN PART the motion for summary judgment brought by defendants Roger Canady and Daniel Torres. Plaintiff's federal claims under 42 U.S.C. § 1983 and his state law battery claim against defendant Torres will proceed to trial.

The court sets **October 4, 2019 at 9 a.m.** as the date for the final pretrial conference. The parties' joint final pretrial conference statement is due fourteen (14) days prior to the final pretrial conference.

IT IS SO ORDERED.

DATED: August 7, 2019.

_____
UNITED STATES DISTRICT JUDGE