UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK C. BUCKHALTER, | Civ. No. 2:17-cv-02072-KJM-AC |
| Plaintiff, | |
| v. | FINAL PRETRIAL ORDER |
| DANIEL TORRES, in his personal capacity as a peace officer of Vacaville Police Department, | |
| Defendant. | |

This matter is proceeding on plaintiff's Fourth and Fourteenth Amendment claims and state law claim for battery against Officer Torres based on the manner and duration of plaintiff's handcuffing.

On November 6, 2019, the court conducted a final pretrial conference. Attorney Darryl Yorkey appeared for plaintiff Nick C. Buckhalter, and attorneys Richard Osman and Sheila Crawford appeared for defendant Daniel Torres.

After hearing, and good cause appearing, the court makes the following findings and orders.

/////

/////

/////

## JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. § 1331, as plaintiff alleges violation of his civil rights under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391. Jurisdiction and venue are not contested.

## JURY/NON-JURY

The parties jointly request a trial by jury; **7 jurors** will be empaneled.

## JOINT STATEMENT OF THE CASE

This case involves the alleged excessive force by a police officer as a result of allegedly tight handcuffs. At the time of the incident, plaintiff Nick Buckhalter was a resident of the City of Vacaville and defendant Daniel Torres was a police officer with the City of Vacaville Police Department. On September 9, 2016, Buckhalter was arrested by Officer Torres. Buckhalter was secured in handcuffs and transported to the Solano County Jail. Buckhalter alleges the handcuffs were too tight and caused him injury to his right wrist and hand. Defendant denies plaintiff's allegations.

## UNDISPUTED FACTS[1]

On September 9, 2016, plaintiff Nick C. Buckhalter and his wife were moving from their home at 296 Madison Avenue in Vacaville, California to Georgia. A large 40–48-foot moving truck was parked on the street in front of plaintiff's home. Plaintiff owned numerous vehicles and had moved six of his cars out of the garage and parked them on the street near the park located across the street from his residence to allow the movers to pack and load the moving truck. Plaintiff parked his Chevrolet Monte Carlo on the street, across from his residence, and three or four houses down from his home. A large vehicle transport truck arrived at approximately 3:00 p.m. to move some of plaintiff's cars to Georgia. The transport truck parked across the street from plaintiff's home.

At approximately 5:00 p.m., plaintiff went to move his Monte Carlo to the vehicle transport truck. Plaintiff got into the Monte Carlo, started the car and put it in drive to pull out.

---

[1] This section is taken essentially verbatim from the parties' Joint Status Report, with minor grammatical and stylistic edits.

2

At that time, off-duty Vacaville police officer Roger Canady was at the park with his young child and he observed plaintiff driving the Monte Carlo and appear to do a "burn out" on the street while children were on the adjacent sidewalk and in the adjacent park in violation of California Vehicle Code section 23109 (speed contests and exhibitions of speed).  Plaintiff then parked the Monte Carlo behind the transport truck for loading.  When plaintiff exited his vehicle, Canady told plaintiff that the manner he drove the Monte Carlo was unlawful and irresponsible and advised him that he faced being arrested for violation of section 23109.  Plaintiff walked towards Canady and Canady identified himself as an off-duty police officer and warned plaintiff there were kids and other pedestrians nearby and that he should not be driving in the manner he was.  Plaintiff claims he did not believe Canady was an off-duty police officer.

A few minutes later, while Canady was seated at the park, he heard plaintiff yell, "I'll be back," but he did not know if this was intended as a threat towards him.  Canady called the Vacaville Police Department and requested a uniformed officer to come to the scene and arrest plaintiff for violating Vehicle Code section 23109.

Approximately five minutes later a police car pulled up, parked and a uniformed officer, defendant Officer Torres, walked up to Canady and started talking to him.  Plaintiff claims that he believed they were talking about him so he went across the street towards the officers.  As plaintiff approached, Officer Torres said, "hold on a minute," so plaintiff stopped and stood by the back of the Monte Carlo, and then sat on the trunk of the car until Officer Torres came to talk to him. Officer Torres recorded his interaction with plaintiff on his body worn camera that was attached to his chest with a clip.  Plaintiff admitted to Officer Torres that it was inappropriate to be doing burn outs down the street in close proximity to the park and children.  Plaintiff told Torres that the tires spun out and he apologized for the tires spinning and jerking.  Officer Torres observed black tire tread marks on the roadway.

Officer Torres told plaintiff he was going to issue him a citation for his reckless driving, and plaintiff became very angry.  Plaintiff told Officer Torres that when he was done issuing the citation, plaintiff was going to approach Canady and "knock him out."  Plaintiff then stated, "You're going to also have to arrest me, because I'm going to knock him out as soon as this is

3

over. If you run my record, you know, I don't have no felonies, no warrants. I have a lot of assaults and he's going to get assaulted as soon as you leave." Plaintiff motioned towards Canady as he made these statements.

Officer Torres told plaintiff to sit on the curb but plaintiff became increasingly agitated, refused to sit on the curb and said, "Why should I have to sit on the curb?" Plaintiff said he was 60 years old and was sitting on the car while talking to Officer Torres. Officer Torres twice asked plaintiff to sit on the curb before plaintiff finally complied. Plaintiff got off the trunk of the Monte Carlo and sat on the curb. Because of plaintiff's aggressive and agitated behavior and his threats to physically attack Canady, Officer Torres decided to place him in handcuffs due to concerns for his own safety and the safety of Canady. Officer Torres ordered plaintiff to place his hands on top of his head, but plaintiff did not comply. Plaintiff finally placed his hands on his head after several orders. Plaintiff removed both of his hands from the top of his head and brought them in front of his body, then moved them on top of his head again.

Officer Torres placed one handcuff on plaintiff's right wrist while his hands were on top of his head and proceeded to pull his arms behind his back to secure his left wrist behind his back. While Officer Torres performed this maneuver, plaintiff said, "I got a rotator cuff, you see my shoulder," and he pulled his left hand out of Officer Torres's grip and towards the front of his body. Plaintiff's movement of pulling his arm from Officer Torres' grip caused the body worn camera to fly off of Officer Torres' body and onto the ground, which caused the video to stop recording. Plaintiff admits he tried to hold his arms stiff so Officer Torres could not pull his arms behind his body and he was pulling his left arm towards his body "the whole time" to avoid being handcuffed.

Canady observed the interaction between plaintiff and Officer Torres and it appeared to him plaintiff was agitated and arguing with Officer Torres. Canady observed several of plaintiff's associates walking toward Officer Torres and plaintiff and he was concerned for Officer Torres's safety because of plaintiff's aggressive resistance and the group of plaintiff's associates moving that direction. Based on the escalating situation and plaintiff's physical resistance, Canady determined it necessary to assist Torres in handcuffing plaintiff. As plaintiff and Torres struggled

4

on the ground, Canady approached. Canady used his right knee to lean on plaintiff's left side to roll him on to his stomach so Officer Torres could handcuff plaintiff's left wrist. Canady then moved away from the area and left the scene. Canady used no other force and had no other involvement in plaintiff's arrest. The only force Officer Torres used during the incident was bringing plaintiff's hands behind his back to secure him in handcuffs.

Prior to securing plaintiff in handcuffs, Officer Torres did not observe plaintiff exhibit any mobility limitations, including limitations with his left shoulder. Rather, during Officer Torres' investigation, plaintiff reached behind his back with his left hand to retrieve his wallet from his left rear pocket, raised his left hand above his head to waive at passersby and to point at someone across the street, used both hands to brace himself as he hopped onto the trunk of his vehicle and supported his body weight and never exhibited any pain or difficulty.

Once plaintiff's hands were cuffed behind his back, Officer Torres lifted him up to place him in a police car. Plaintiff was secured in handcuffs behind his back and placed in the back of Officer Torres' police vehicle.

After plaintiff was secured in the police vehicle, he told Officer Torres his shoulder was hurting. Plaintiff did not tell anyone other than Officer Torres about his shoulder or that he was feeling pain. Officer Torres then took plaintiff to the hospital to be examined within fifteen minutes of leaving plaintiff's residence. X-rays were taken and a doctor reported that plaintiff's shoulder looked fine and was just inflamed. Plaintiff was given an injection in his left shoulder, which gave him pain relief an hour-and-a-half to two hours after the injection.

Officer Torres transported plaintiff to jail.

DISPUTED FACTUAL ISSUES

1. Whether Plaintiff Performed a "Burnout" Intentionally.
2. Whether Plaintiff was Secured in Two Sets of Handcuffs that Were Too Tight and Double Locked.
3. The Propriety of Defendant's Handcuffing Plaintiff Behind His Back Instead of in Front of His Body.

/////

5

4. Whether Plaintiff's Arm Should Have Been Placed in a Sling as Suggested by the Doctor Who Examined Him.

5. Length of Time Plaintiff was Secured Tightly in Handcuffs During Transport to Jail.

DISPUTED EVIDENTIARY ISSUES

The court will decide evidentiary disputes and/or motions *in limine* on the first day of trial, or reserve ruling, where appropriate, as trial unfolds. If a party wishes to contest a pretrial ruling, it must do so through a proper motion or objection, or otherwise forfeit appeal on such grounds. *See* Fed. R. Evid. 103(a); *Tennison v. Circus Enters., Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) ("Where a district court makes a tentative in limine ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial.") (alteration, citation and quotation omitted). In addition, challenges to expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) are denied without prejudice. Should a party wish to renew a *Daubert* challenge at trial, it should alert the court, at which point the court may grant limited voir dire before such expert may be called to testify.

Motions *in limine* shall be filed with the court no later than **February 3, 2020**. Oppositions shall be filed no later than **February 17, 2020**, and replies, if any, shall be filed by **February 24, 2020**.

Plaintiff anticipates filing motions in limine to exclude the following evidence:
- Reference to plaintiff's prior criminal history.
- All evidence not timely disclosed.
- Testimony from late-disclosed witnesses and experts.

Defendant anticipates filing motions to exclude:
- Reference to prior complaints against officers, investigations, witness accounts and reports and reference to officer personnel files; if denied, defendant will seek a trial protective order modeled on the discovery protective order entered in this case. *See* ECF No. 44.
- All evidence not timely disclosed.

- Evidence regarding the result of plaintiff's criminal prosecution related to the incident.
- Evidence of plaintiff's speculative wage loss.
- Testimony from late-disclosed witnesses and experts.

SPECIAL FACTUAL INFORMATION[2]

1. Date, Place and Nature of the Incident

This case proceeds on plaintiff's Fourth Amendment excessive force claim and his Fourteenth Amendment claim for failure to protect against Officer Torres based upon the manner in which Officer Torres secured plaintiff in handcuffs. Plaintiff also brings a claim for battery against Officer Torres based on the same facts surrounding his handcuffing. The incident occurred on September 9, 2016, at approximately 5:00 p.m. in front of plaintiff's residence, 301 Madison Avenue in Vacaville, California. Officer Torres responded to a call for service because plaintiff was reportedly doing burnouts in the street. Officer Torres attempted to secure plaintiff in handcuffs after he threatened to "knock out" off-duty police officer, Roger Canady. Plaintiff resisted Officer Torres but was eventually secured in handcuffs. Plaintiff alleges he was kept in handcuffs for an excessive amount of time and that they were too tight.

2. Age, Injuries and Claimed Damages

Plaintiff was 60 years old at the time of the incident. Plaintiff alleges he suffered injuries to his left shoulder and right wrist. Plaintiff testified that no doctor has recommended any future treatment for the physical injuries he attributes to the incident. Plaintiff alleges he suffered wage loss and loss of earning capacity as a result of the incident. Prior to the incident, plaintiff alleges he earned $5,000 a month as a self-employed mechanic restoring vintage vehicles. He alleges that after the incident, he did not return to work until January 5, 2017, and lost approximately $28,000 in income. Plaintiff alleges he will lose $900,000 in future income. No documentary evidence has been produced to support the past or future wage loss claim. Plaintiff alleges he incurred a towing and storage fee of $900, a $400 fee related to transportation costs and incurred a loss of $300 related to a missing spare tire and jack.

---

[2] Some of this information is repeated elsewhere in this order, but is retained here as presented by the parties given the clarification it provides regarding damages.

RELIEF SOUGHT

Plaintiff seeks total recovery of $149,600, itemized as follows: $28,000 for lost income up to January 5, 2017; $1,600 in direct economic losses; a reduced future income loss of $20,000 per year for 5 years following the incident; and $20,000 in punitive damages. Plaintiff also seeks attorney fees for 302.6 hours at a rate of $400 per hour, for a total recovery of $121,040. After trial, plaintiff estimates the number of hours will increase by 80 to 100 hours. In his answer to the complaint, defendant indicates he will seek attorney fees if he prevails.

ABANDONED ISSUES

In the court's August 7, 2019 summary judgment order, the court noted plaintiff conceded summary judgment on all claims against defendant Canady and on his state law assault, IIED and NIED claims as to Officer Torres. Summary judgment as to these claims was entered accordingly.

WITNESSES

Plaintiff's witness list is attached as **Exhibit A**. Defendant's witness list is attached as **Exhibit B**.

Each party may call any witnesses designated by the other.

1. The court will not permit any other witness to testify unless:

    a. The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

    b. The witness was discovered after the pretrial conference and the proffering party makes the showing required in "2," below.

2. Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

    a. The witness could not reasonably have been discovered prior to the discovery cutoff;

/////

      b. The court and opposing parties were promptly notified upon discovery of the witness;

      c. If time permitted, the party proffered the witness for deposition; and

      d. If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

EXHIBITS

Plaintiff's exhibits are identified in **Exhibit C**. Defendant's exhibits are identified in **Exhibit D**. As discussed during the final pretrial conference, the parties may list their exhibits numerically, but must ensure there is no overlap within each party's respective numerical exhibit range.

The court encourages the parties to generate a joint exhibit list to the extent possible. Joint Exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2.

All exhibits must be pre-marked.

The parties must prepare exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above. Each binder shall have an identification label on the front and spine.

The parties must exchange exhibits no later than twenty-eight days before trial. Any objections to exhibits are due no later than fourteen days before trial.

1. The court will not admit exhibits other than those identified on the exhibit lists referenced above unless:

      a. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

      b. The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in Paragraph "2," below.

2. Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits so that the court may consider /////
/////

9

their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

    a. The exhibits could not reasonably have been discovered earlier.

    b. The court and the opposing parties were promptly informed of their existence.

    c. The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

The parties do not believe any special handling of trial exhibits is necessary. The court will return all exhibits to the parties at the conclusion of trial and the parties are responsible for exhibit preservation for purposes of appeal.

DISCOVERY DOCUMENTS

The parties do not intend to introduce any discovery documents unless used for impeachment.

FURTHER DISCOVERY OR MOTIONS

The parties do not anticipate any pre-trial discovery motions apart from the *in limine* motions indicated above.

STIPULATIONS

No stipulations currently exist between the parties.

AMENDMENTS/DISMISSALS

Defendant does not anticipate any amendments but reserves the right to move to amend his pleadings to include additional affirmative defenses, if necessary. Any attempt to amend will be governed by the Federal Rules of Civil Procedure.

SETTLEMENT NEGOTIATIONS

The parties attended a mandatory settlement conference on September 27, 2018. The case did not settle. At the final pretrial conference, the parties jointly requested a second settlement conference before a magistrate judge. Accordingly, a settlement conference is set for

**February 3, 2020 at 9:30 a.m. before Magistrate Judge Carolyn K. Delaney**. The parties are instructed to have a principal with full settlement authority present at the settlement conference or to be fully authorized to settle the matter on any terms. The individual with full authority to settle must also have "unfettered discretion and authority" to change the settlement position of the party, if appropriate. The purpose behind requiring the attendance of a person with full settlement authority is that the parties' view of the case may be altered during the face to face conference. An authorization to settle for a limited dollar amount or sum certain can be found not to comply with the requirement of full authority to settle. The parties are directed to submit confidential settlement conference statements to the court using the following email address: **ckdorders@caed.uscourts.gov**. If a party desires to share additional confidential information with the court, they may do so pursuant to the provisions of Local Rule 270(d) and (e). Such statements are due at least **seven (7) days** prior to the settlement conference. Upon submission of confidential settlement statements, each party shall file on the docket a "Notice of Submission of Settlement Conference Statement."

AGREED STATEMENTS

The parties do not believe the action can be presented upon an agreed upon statement of facts because there are key factual disputes between the parties.

SEPARATE TRIAL OF ISSUES

There will be no separate trial of issues.

DEPOSITION TRANSCRIPTS

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court on the first day of trial.

ESTIMATED TIME OF TRIAL/TRIAL DATE/TRIAL BRIEFS

A jury trial is set for **March 9, 2020, at 1:30 p.m.** in courtroom 3 before the Honorable Kimberly J. Mueller. Trial briefs are due **fourteen (14) days** prior, and should address the parties' positions regarding trial to the jury of fact questions related to qualified immunity. Trial is anticipated to last three to five court days. A detailed schedule will be provided by the courtroom deputy by the first day of trial.

<u>OBJECTIONS TO PRETRIAL ORDER</u>

Each party is granted **fourteen (14) days** from the date of this order to file objections to the same. If no objections are filed, the order will become final without further order of this court.

IT IS SO ORDERED.

DATED: December 9, 2019.

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT A
## PLAINTIFF'S WITNESS LIST

1. **Nick Buckhalter**, plaintiff, 117 Stillwood Drive, Warner Robins, GA 31088, 760-985-4833
2. **Regina Buckhalter**, plaintiff's spouse, 117 Stillwood Drive, Warner Robins, GA 31088, 760-985-4833
3. **Ray Cardenas, Jr.**, 302 Madison Avenue, Vacaville, CA 95687, 707-685-1335
4. **Arnold Cruz, D.O.**, Northbay Healthcare/VacaValley Hospital, 1000 Nut Tree Road, Vacaville, CA 95687, (707) 624-7000
5. **Michael W. Grafe, M.D.**, Redwood Orthopaedic Surgery Associates 208 Concourse Blvd., Santa Rosa, CA 95403 (707) 544-3400
6. **Garth Davis, M.D.**, 421 Nut Tree Rd, Vacaville, CA 95687 (707) 624-7500
7. **Kimberly Ham, M.D.**, 2510 GA-127, Kathleen, GA 31047 (478) 988-1865
8. **Amy Kilbarger**, Bldg 700, 655 Seventh Street, Robins AFB, GA 31098 (478) 327-7850

**EXHIBIT B**

**DEFENDANT'S WITNESS LIST**

1. **Officer Daniel Torres**, c/o Richard Osman, Bertrand, Fox, Elliot, Osman & Wenzel 2749 Hyde Street, San Francisco, CA 94109 (415) 353-0999 ext. 104
2. **Officer Roger Canady**, c/o Richard Osman, Bertrand, Fox, Elliot, Osman & Wenzel, 2749 Hyde Street, San Francisco, CA 94109 (415) 353-0999 ext. 104
3. **Captain Ian Schmutzler**, c/o Richard Osman, Bertrand, Fox, Elliot, Osman & Wenzel, 2749 Hyde Street, San Francisco, CA 94109 (415) 353-0999 ext. 104
4. **Officer Lopez**, c/o Richard Osman, Bertrand, Fox, Elliot, Osman & Wenzel, 2749 Hyde Street, San Francisco, CA 94109 (415) 353-0999 ext. 104
5. **Officer Julia Bailey**, c/o Richard Osman, Bertrand, Fox, Elliot, Osman & Wenzel, 2749 Hyde Street, San Francisco, CA 94109 (415) 353-0999 ext. 104
6. **Officer David McDonald**, c/o Richard Osman, Bertrand, Fox, Elliot, Osman & Wenzel, 2749 Hyde Street, San Francisco, CA 94109 (415) 353-0999 ext. 104
7. **Officer Cardona**, c/o Richard Osman, Bertrand, Fox, Elliot, Osman & Wenzel, 2749 Hyde Street, San Francisco, CA 94109 (415) 353-0999 ext. 104
8. **Sergeant David Spencer**, c/o Richard Osman, Bertrand, Fox, Elliot, Osman & Wenzel, 2749 Hyde Street, San Francisco, CA 94109 (415) 353-0999 ext. 104
9. **Sergeant Bryan Larsen**, c/o Richard Osman, Bertrand, Fox, Elliot, Osman & Wenzel, 2749 Hyde Street, San Francisco, CA 94109 (415) 353-0999 ext. 104
10. Chief John Carli, c/o Richard Osman, Bertrand, Fox, Elliot, Osman & Wenzel, 2749 Hyde Street, San Francisco, CA 94109 (415) 353-0999 ext. 104
11. **Carrie Lynn Carver**, 555 Elmira Rd., #117, Vacaville, CA 95687 (707) 628-4544
12. **Sharron Ann Johnson**, 555 Elmira Rd., #117, Vacaville, CA 95687 (530) 949-9776
13. **Regina C. Boyd-Buckhalter**, 117 Stillwood Dr., Warner Robins, GA 31088 (760) 985-4833
14. **Plaintiff Nick C. Buckhalter**, c/o Darryl D. Yorkey, Alan A. Beck and Catherine A. Beekman

15. **Michael W. Grafe, M.D.** – Defense Expert, Redwood Orthopaedic Surgery Associates, 208 Concourse Blvd., Santa Rosa, CA 95403 (707) 544-3400
16. **Don S. Cameron** – Defense Expert, 2336 Banbury Loop, Martinez, CA 94553 (925) 228-0318
17. Any and all hospital personnel familiar with the plaintiff arising from the subject incident at NorthBay VacaValley Hospital, 1000 Nut Tree Rd, Vacaville, CA 95687 (707) 624-7000
18. Any and all deputies and other personnel from the Solano County Detention Facility/Jail familiar with the plaintiff arising from the subject incident, Solano County Detention Facility/Jail, 500 Union Avenue Fairfield, California 94533 (707) 784-7100

# EXHIBIT C
## PLAINTIFF'S EXHIBIT LIST

1. IME report by Dr. Michael Grafe
2. Nick Buckhalter's medical records
3. Nick Buckhalter's diary entries
4. Nick Buckhalter's medical bills
5. Towing receipt of vehicle after incident at issue
6. Photographs taken of the incident at issue
7. Videos taken of the incident
8. Records showing charges against Nick Buckhalter were dropped
9. Police reports regarding the incident
10. The arrest report underlying the incident
11. All police body cams footage of the incident
12. All vehicle reports made connected to the incident
13. Police radio reports of the incident
14. All evidence listed in defendant's exhibit list

# EXHIBIT D
# DEFENDANT'S EXHIBIT LIST

1. Vacaville Police Department Police Report for case 2016-07061 and all supplements thereto and all materials and evidence referenced therein, including but not limited to the following:
   a. Narrative Report by Officer Daniel Torres;
   b. Supplemental Report by Officer Lopez;
   c. Supplemental Report by Officer Roger Canady;
   d. Supplemental Report by Officer Julie Bailey; and
   e. Supplemental Report by Officer David McDonald
2. Vacaville Police Department Certificate of Release
3. California Department of CHP Vehicle Report for Case No. 16-7061
4. Solano County Sheriff's Office Arrest Report for Case No. 16-7061
5. Solano County Detention Facilities On-View and Probable Case Declaration Information for Case No. 16-7061
6. Body camera video recordings from the following Vacaville Police officers:
   a. Torres;
   b. Canady;
   c. McDonald;
   d. Bailey; and
   e. Cardona
7. Dispatch audio related to the subject incident
8. Radio Traffic related to the incident
9. Relevant/material portions of Officer Torres's personnel and training records – subject to protective order. *See* ECF No. 44.
10. Any and all photographs related to the subject incident
11. All City of Vacaville Claim Forms submitted by plaintiff related to the incident
12. Vacaville Police Department policies including but not limited to the use of force

13. CAD Operations Report related to the subject incident
14. Timeline of Plaintiff's arrest and transport
15. Stills from Officer Torres' body camera re plaintiff's body movements
16. Videos produced by plaintiff related to the subject incident
17. Photographs produced by Plaintiff related to the subject incident
18. Report by defense expert Dr. Michael Grafe
19. Report by defense expert Don S. Cameron
20. Plaintiff's medical and billing records, including the records reviewed by defense expert, Dr. Grafe
21. All evidence listed in plaintiff's exhibit list